UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

IN THE MATTER OF THE SEARCH OF:

No. ____4:20-mj-48_____

20-052-04

**REDACED APPLICATION FOR
SEARCH AND SEIZURE
WARRANT**

I, Craig Scherer, being duly sworn depose and say:

I am a Special Agent with the United States Department of Homeland Security, Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI), and have reason to believe that on the property or premises fully described in Attachment A, there is now concealed certain property, namely: that which is fully described in Attachment B, attached hereto and incorporated herein by reference, which I believe is property constituting evidence of the commission of criminal offenses, contraband, the fruits of crime, or things otherwise criminally possessed, or property designed or intended for use or which is or has been used as the means of committing criminal offenses, concerning violations of 18 U.S.C. §§ 2251 (sexual exploitation of children), 2252 (certain activities relating to material involving the sexual exploitation of minors), and 2252A (certain activities relating to material constituting or containing child pornography).

The facts to support a finding of Probable Cause are contained in my Affidavit filed herewith.

_____
Craig Scherer, Special Agent
Department of Homeland Security

Subscribed and sworn to before me, telephonically, on the 27th day of May_____, 2020, at Sioux Falls, South Dakota.

_____
VERONICA L. DUFFY
United States Magistrate Judge

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

IN THE MATTER OF THE SEARCH OF:     No. _4:20-mj-48_____

20-052-04                           **REDACTED SEARCH
                                    AND SEIZURE WARRANT**

TO:   ANY AUTHORIZED LAW ENFORCEMENT OFFICER

An application by a federal law enforcement officer or an attorney for the government requests the search of the following property more fully described in Attachment A, attached hereto and incorporated herein by reference.

I find that the affidavit, or any recorded testimony, establish probable cause to search and seize the property described above, and that such search will reveal evidence of violations of 18 U.S.C. §§ 2251 (sexual exploitation of children), 2252 (certain activities relating to material involving the sexual exploitation of minors), and 2252A (certain activities relating to material constituting or containing child pornography), which is more fully described in Attachment B, attached hereto and incorporated herein by reference.

**YOU ARE COMMANDED** to execute this warrant on or before 6-10-2020 _____ (not to exceed 14 days)
☒ in the daytime – 6:00 a.m. to 10:00 p.m.
☐ at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to the undersigned Judge.

☐   Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized,
☐ for _____ days *(not to exceed 30).*

[2]

☐   until, the facts justifying, the later specific date of _____.


*5-27-2020 at 2pm CDT* at Sioux Falls, South Dakota
Date and Time Issued telephonically


_____
VERONICA L. DUFFY
United States Magistrate Judge

[3]

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

IN THE MATTER OF THE SEARCH OF:        No. _____4:20-mj-48_____

20-052-04                              **REDACTED RETURN**

Date and time warrant executed:  _____

Copy of warrant and inventory left with:  _____

Inventory made in the presence of:  _____

Inventory of the property taken and name of any person(s) seized (attach additional sheets, if necessary):

| CERTIFICATION |
|---|
| I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge. |
| _____<br>Craig Scherer, Special Agent<br>Department of Homeland Security |

**ATTACHMENT A**
**Property to Be Searched**

This warrant applies to the contents of and information associated with a Western Digital 8TB SATA hard drive, SN: VDHMNGVD, containing the forensic image of an Acer laptop computer, identified as P19042878 Acer LTHD01 500GB, seized from Nuwan WICKRAMASINGHE, currently in the custody of HSI Sioux Falls located at 2708 N. 1st Avenue, Sioux Falls, SD.

**ATTACHMENT B**
**PROPERTY TO BE SEARCHED AND/OR SEIZED**

This warrant authorizes (i) the search of the property identified in Attachment A for only the following and (ii) authorizes the seizure of the items listed below only to the extent they constitute the following:

(a)      evidence of violations of 18 U.S.C. §§ 2252 and 2252A ("subject violations"); or

(b)      any item constituting contraband due to the subject violations, fruits of the subject violations, or other items possessed whose possession is illegal due to the subject violations; or

(c)      any property designed for use, intended for use, or used in committing any subject violations.

Subject to the foregoing, the items authorized to be seized include the following:

1. Computer(s), computer hardware, computer software, computer related documentation, computer passwords and data security devices, mobile telephone devices, mobile data storage devices, mobile electronic music players, video gaming devices, videotapes, video recording devices, video recording players, and video display monitors that may be, or are used to: visually depict child pornography or child erotica; display or access information pertaining to a sexual interest in child pornography; display or access information pertaining to sexual activity with children; or distribute, possess, or receive child pornography, child erotica, or information pertaining to an interest in child pornography or child erotica.

2. Any and all computer software, including programs to run operating systems, applications (such as word processing, graphics, or spreadsheet programs), utilities, compilers, interpreters, and communications programs, including, but not limited to, P2P software.

3. Any and all notes, documents, records, or correspondence, in any format and medium (including, but not limited to, e-mail messages, chat logs and electronic messages) pertaining to the possession, receipt, or distribution of child pornography as defined in 18 U.S.C. § 2256(8) or to the possession, receipt, or distribution of visual depictions of minors engaged in sexually explicit conduct as defined in 18 U.S.C. § 2256(2).

4. In any format and medium, all originals, computer files, copies, and negatives of child pornography as defined in 18 U.S.C. § 2256(8), visual depictions of minors engaged in sexually explicit conduct as defined in 18 U.S.C. § 2256(2), or child erotica.

5. Any and all notes, documents, records, or correspondence, in any format or medium (including, but not limited to, e-mail messages, chat logs and electronic messages),

[3]

identifying persons transmitting, through interstate or foreign commerce by any means, including, but not limited to, by the United States Mail or by computer, any child pornography as defined in 18 U.S.C. § 2256(8) or any visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256(2).

6. Any and all notes, documents, records, or correspondence, in any format or medium (including, but not limited to, e-mail messages, chat logs and electronic messages, other digital data files and web cache information) concerning the receipt, transmission, or possession of child pornography as defined in 18 U.S.C. § 2256(8) or visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256(2).

7. Any and all notes, documents, records, or correspondence, in any format or medium (including, but not limited to, e-mail messages, chat logs and electronic messages, and other digital data files) concerning communications between individuals about child pornography or the existence of sites on the Internet that contain child pornography or that cater to those with an interest in child pornography.

8. Any and all notes, documents, records, or correspondence, in any format or medium (including, but not limited to, e-mail messages, chat logs and electronic messages, and other digital data files) concerning membership in online groups, clubs, or services that provide or make accessible child pornography to members.

9. Any and all records, documents, invoices and materials, in any format or medium (including, but not limited to, e-mail messages, chat logs and electronic messages, and other digital data files) that concern any accounts with an Internet Service Provider.

10. Any and all records, documents, invoices and materials, in any format or medium (including, but not limited to, e-mail messages, chat logs and electronic messages, and other digital data files) that concern online storage or other remote computer storage, including, but not limited to, software used to access such online storage or remote computer storage, user logs or archived data that show connection to such online storage or remote computer storage, and user logins and passwords for such online storage or remote computer storage.

11. Any and all visual depictions of minors.

12. Any and all address books, mailing lists, supplier lists, mailing address labels, and any and all documents and records, in any format or medium (including, but not limited to, e-mail messages, chat logs and electronic messages, and other digital data files), pertaining to the preparation, purchase, and acquisition of names or lists of names to be used in connection with the purchase, sale, trade, or transmission, through interstate or foreign commerce by any means, including by the United States Mail or by computer, any child pornography as defined in 18 U.S.C. § 2256(8) or any visual depiction of minors engaged in sexually explicit conduct,   as defined in 18 U.S.C. § 2256(2).

13. Any and all documents, records, or correspondence, in any format or medium (including, but not limited to, e-mail messages, chat logs and electronic messages, and other digital data files), pertaining to the ownership or use of the devices listed in Attachment A,

[4]

including, but not limited to, rental or lease agreements, rental or lease payments.

14. Any and all diaries, notebooks, notes, and any other records. in any format or medium (including, but not limited to, e-mail messages, chat logs and electronic messages, and other digital data files), reflecting personal contact and any other activities with minors visually depicted while engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256(2).

15. Records or other items which evidence ownership or use of electronic devices listed in Attachment A, including, but not limited to, sales receipts, bills for Internet access, purchase agreements, registration documents, or profiles.

16. Before reviewing data from the electronic storage media or electronic stored information seized pursuant to this warrant for purposes unrelated to this investigation, the government agrees to request another search warrant from the court.

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

_____

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF: | CASE NUMBER:   4:20-mj-48 |
| 20-052-04 | **REDACTED AFFIDAVIT IN SUPPORT OF SEARCH WARRANT APPLICATION** |

_____

STATE OF SOUTH DAKOTA    )
                         ) SS
COUNTY OF MINNEHAHA      )

<u>INTRODUCTION AND AGENT BACKGROUND</u>

I, Craig Scherer, being duly sworn, states as follows:

1.    I am a Special Agent with the United States Department of Homeland Security, Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI) in Sioux Falls, South Dakota and have been duly employed in this position since December 2003. I am a graduate of the Criminal Investigator Training Program and ICE Special Agent Training Program at the Federal Law Enforcement Training Center. I have received specialized training pertaining to conducting criminal investigations, immigration and customs laws, investigative techniques, searching databases, conducting interviews, executing search warrants, and making arrests with respect to criminal violations of United States Code.

2.    I have investigated and assisted in the investigation of cases involving the possession, receipt, and distribution of child pornography in violation of United States Statues 18 U.S.C. §§ 2251, 2252, and 2252A, involving violations of law involving child pornography and 18 U.S.C. § 2422(b), enticement of a minor using the internet.  During my law enforcement career I have become familiar with the *modus operandi* of persons involved in the illegal production, distribution and possession of child pornography and those who engage in enticement of minors using the internet.  Based on my experience and training, I am knowledgeable of the various means utilized by individuals who illegally produce, distribute, receive and possess child pornography.

3.    I have been informed that 18 U.S.C. § 2422(b) prohibits enticing minors to engage in sexual acts and that 18 U.S.C. §§ 2251, 2252, and 2252A prohibit the manufacture, distribution, receipt, and possession of child pornography.  Additionally, I have been informed that 18 U.S.C. § 1466A

prohibits the distribution of visual representations of the sexual abuse of children and that such depictions include cartoon images.

4.     The facts set forth in this affidavit are based on my personal knowledge; knowledge obtained from other individuals, including other law enforcement officers; interviews of persons with knowledge; my review of documents, interview reports and computer records related to this investigation; communications with others who have personal knowledge of the events and circumstances described herein; and information gained through my training and experience.   This affidavit contains information necessary to support probable cause for this application and does not contain every material fact that I have learned during the course of this investigation; however, no information known to me that would tend to negate probable cause has been withheld from this affidavit.

## ITEMS TO BE SEARCHED FOR AND SEIZED:

5.     This affidavit is submitted in support of an application for a search warrant for the contents of and information pertaining to a Western Digital 8TB SATA hard drive, SN: VDHMNGVD, containing the forensic image of an Acer laptop computer, identified as P19042878 Acer LTHD01 500GB, seized from Nuwan WICKRAMASINGHE, by the Ontario Provincial Police in Canada, which is more specifically described in Attachment A, for contraband and evidence, fruits, and instrumentalities of violations of 18 U.S.C. §§ 2251, 2252, and 2252A (production, receipt and possession of child pornography), which items are more specifically described in Attachment B.

## DEFINITIONS

6.     The following definitions apply to this affidavit and Attachments A and B:

a.     "Chat," as used herein, refers to any kind of text communication over the Internet that is transmitted in real-time from sender to receiver.  Chat messages are generally short in order to enable other participants to respond quickly and in a format that resembles an oral conversation.  This feature distinguishes chatting from other text-based online communications such as Internet forums and email.

b.     "Child Erotica," as used herein, means materials or items that are sexually arousing to persons having a sexual interest in minors but that are not necessarily, in and of themselves, obscene or that do not necessarily depict minors in sexually explicit poses or positions.

2

c.   "Child pornography," as defined in 18 U.S.C. § 2256(8), is any visual depiction of sexually explicit conduct where (a) the production of the visual depiction involved the use of a minor engaged in sexually explicit conduct, (b) the visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaged in sexually explicit conduct, or (c) the visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaged in sexually explicit conduct.

d.   "Cloud-based storage service," as used herein, refers to a publicly accessible, online storage provider that collectors of child pornography can use to store and trade child pornography in larger volumes.  Users of such a service can share links and associated passwords to their stored files with other traders of child pornography in order to grant access to their collections.  Such services allow individuals to easily access these files through a wide variety of electronic devices such as desktop and laptop computers, mobile phones, and tablets, anywhere and at any time.  An individual with the password to file stored on a cloud-based service does not need to be a user of the service to access the file.  Access is free and readily available to anyone who has an internet connection.

e.   "Computer," as used herein, refers to "an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device" and includes smartphones, and mobile phones and devices.  See 18 U.S.C. § 1030(e)(1).

f.   "Computer hardware," as used herein, consists of all equipment which can receive, capture, collect, analyze, create, display, convert, store, conceal, or transmit electronic, magnetic, or similar computer impulses or data.  Computer hardware includes any data-processing devices (including, but not limited to, central processing units, internal and peripheral storage devices such as fixed disks, external hard drives, floppy disk drives and diskettes, and other memory storage devices); peripheral input/output devices (including, but not limited to, keyboards, printers, video display monitors, and related communications devices such as cables and connections), as well as any devices, mechanisms, or parts that can be used to restrict access to computer hardware (including, but not limited to, physical keys and locks).

g.   "Computer software," as used herein, is digital information which

3

can be interpreted by a computer and any of its related components to direct the way they work. Computer software is stored in electronic, magnetic, or other digital form. It commonly includes programs to run operating systems, applications, and utilities.

h.  "Computer-related documentation," as used herein, consists of written, recorded, printed, or electronically stored material which explains or illustrates how to configure or use computer hardware, computer software, or other related items.

i.  "Computer passwords, pass-phrases and data security devices," as used herein, consist of information or items designed to restrict access to or hide computer software, documentation, or data. Data security devices may consist of hardware, software, or other programming code. A password or pass-phrase (a string of alpha-numeric characters) usually operates as a sort of digital key to "unlock" particular data security devices. Data security hardware may include encryption devices, chips, and circuit boards. Data security software of digital code may include programming code that creates "test" keys or "hot" keys, which perform certain pre-set security functions when touched. Data security software or code may also encrypt, compress, hide, or "booby-trap" protected data to make it inaccessible or unusable, as well as reverse the progress to restore it.

j.  A provider of "Electronic Communication Service" ("ESP"), as defined in 18 U.S.C. § 2510(15), is any service that provides to users thereof the ability to send or receive wire or electronic communications. For example, "telephone companies and electronic mail companies" generally act as providers of electronic communication services. *See* S. Rep. No. 99-541 (1986), reprinted in 1986 U.S.C.C.A.N. 3555, 3568.

k.  "Electronic Storage Device" includes but is not limited to external and internal hard drives, thumb drives, flash drives, SD cards, gaming devices with storage capability, storage discs (CDs and DVDs), cameras, cellular phones, smart phones and phones with photo-taking and/or internet access capabilities, and any "cloud" storage by any provider.

l.  "File Transfer Protocol" ("FTP"), as used herein, is a standard network protocol used to transfer computer files from one host to another over a computer network, such as the Internet. FTP is built on client-server architecture and uses separate control and data connections between the client and the server.

4

m.     "Internet Protocol address" or "IP address," as used herein, refers to a unique number used by a computer to access the Internet.  IP addresses can be "dynamic," meaning that the ISP assigns a different unique number to a computer every time it accesses the Internet.  IP addresses might also be "static," if an ISP assigns a user's computer a particular IP address that is used each time the computer accesses the Internet.

n.     "Internet Service Providers" ("ISPs"), as used herein, are commercial organizations that are in business to provide individuals and businesses access to the Internet.  ISPs provide a range of functions for their customers including access to the Internet, web hosting, e-mail, remote storage, and co-location of computers and other communications equipment.

o.     "Records," "documents," and "materials," as used herein, include all information recorded in any form, visual or aural, and by any means, whether in handmade, photographic, mechanical, electrical, electronic, or magnetic form.

p.     "Remote Computing Service" ("RCS"), as defined in 18 U.S.C. § 2711(2), is the provision to the public of computer storage or processing services by means of an electronic communications system.

q.     "Short Message Service" ("SMS"), as used herein, is a service used to send text messages to mobile phones.  SMS is also often referred to as texting, sending text messages or text messaging.  The service allows for short text messages to be sent from one cell phone to another cell phone or from the Web to another cell phone.  The term "computer," as defined in 18 U.S.C. § 1030(e)(1), means an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical, arithmetic, or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device.

r.     "Sexually explicit conduct," as defined in 18 U.S.C. § 2256(2), means actual or simulated (a) sexual intercourse, including genital-genital, oral-genital, or oral-anal, whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the genitals or pubic area of any person.

s.     "Visual depiction," as defined in 18 U.S.C. § 2256(5), includes undeveloped film and videotape, data stored on computer disc or

5

other electronic means which is capable of conversion into a visual image, and data which is capable of conversion into a visual image that has been transmitted by any means, whether or not stored in a permanent format.

## BACKGROUND ON CHILD EXPLOITATION AND CHILD PORNOGRAPHY, COMPUTERS, THE INTERNET, AND EMAIL

7.    I have had both training and experience in the investigation of computer related crimes.  Based on my training, experience, and knowledge, I know the following:

a.    Computers and digital technology have dramatically changed the way in which individuals interested in child pornography interact with each other.  Computers basically serve many functions for persons who exploit children online; they serve as a mechanism for meeting child-victims and communicate with them; they serve as a mechanism to get images of the children and send images of themselves; computers serve as the manner in which persons who exploit children online can meet one another and compare notes.

b.    Persons who exploit children online, can now transfer printed photographs into a computer-readable format with a device known as a scanner.  Furthermore, with the advent of digital cameras and smartphones with cameras, when the photograph is taken it is saved as a digital file that can be directly transferred to a computer by simply connecting the camera or smartphone to the computer.  In the last ten years, the resolution of pictures taken by digital cameras and smartphones has increased dramatically, meaning that such pictures have become sharper and crisper.  Photos taken on a digital camera or smartphone may be stored on a removable memory card in the camera or smartphone.  These memory cards often store up to 32 gigabytes of data, which provides enough space to store thousands of high-resolution photographs.  Video camcorders, which once recorded video onto tapes or mini-CDs, now can save video footage in a digital format directly to a hard drive in the camera.  The video files can be easily transferred from the camcorder to a computer.

c.    A device known as a modem allows any computer to connect to another computer through the use of telephone, cable, or wireless connection.  Electronic contact can be made to literally millions of computers around the world.  The ability to produce child pornography easily, reproduce it inexpensively, and market it anonymously (through electronic communications) has drastically changed the method of distribution and receipt of child

6

pornography.  Child pornography can be transferred via electronic mail or through file transfer protocols (FTPs) to anyone with access to a computer and modem.  Because of the proliferation of commercial services that provide electronic mail service, chat services (i.e., "Instant Messaging"), and easy access to the Internet, the computer is a preferred method of distribution and receipt of child pornographic materials.

d.  The computer's ability to store images in digital form makes the computer itself an ideal repository for child pornography and other materials used for the online child exploitation.  The size of the electronic storage media (commonly referred to as the hard drive) used in home computers has grown tremendously within the last several years.  These drives can store thousands of images at very high resolution.  In addition, there are numerous options available for the storage of computer or digital files.  One-Terabyte external and internal hard drives are not uncommon.  Other media storage devices include CDs, DVDs, and "thumb," "jump," or "flash" drives, which are very small devices which are plugged into a port on the computer.  It is extremely easy for an individual to take a photo or a video with a digital camera or camera-bearing smartphone, upload that photo or video to a computer, and then copy it (or any other files on the computer) to any one of those media storage devices (CDs and DVDs are unique in that special software must be used to save or "burn" files onto them).  Media storage devices can easily be concealed and carried on an individual's person.  Smartphones and/or mobile phones are also often carried on an individual's person.

e.  The Internet affords individuals several different venues for meeting and exploiting children in a relatively secure and anonymous fashion.

f.  Individuals also use online resources to exploit children, including services offered by Internet Portals such as Gmail and Hotmail, among others.  The online services allow a user to set up an account with a remote computing service that provides e-mail services as well as electronic storage of computer files in any variety of formats. A user can set up an online storage account from any computer with access to the Internet.  Even in cases where online storage is used, however, evidence of child pornography can be found on the user's computer or external media in most cases.

g.  As is the case with most digital technology, communications by way of computer can be saved or stored on the computer used for these purposes.  Storing this information can be intentional, i.e., by saving

7

an e-mail as a file on the computer or saving the location of one's favorite websites in, for example, "bookmarked" files.  Digital information can also be retained unintentionally, e.g., traces of the path of an electronic communication may be automatically stored in many places (e.g., temporary files or ISP client software, among others).  In addition to electronic communications, a computer user's Internet activities generally leave traces or "footprints" in the web cache and history files of the browser used.  Such information is often maintained indefinitely until overwritten by other data.

**PROBABLE CAUSE**

8.     In April 2019, the Ontario Provincial Police (OPP) in Canada were alerted to the sexual exploitation of a minor female in Ontario, Canada, by Nuwan WICKRAMASINGHE.     The following is a synopsis of the OPP investigation.  Based on information obtained from a minor female, age 14, WICKRAMASINGHE, aka "KEITH", was identified as contacting and grooming the minor female from Snapchat handle "WickKush".  WICKRAMASINGHE also requested the minor female send WICKRAMASINGHE photos.  WICKRAMASINGHE also lured the minor female to meet in person.  WICKRAMASINGHE eventually met the minor female in person in WICKRAMASINGHE's vehicle.  Upon meeting, WICKRAMASINGHE received oral sex from the minor female and ejaculated in her mouth.  WICKRAMASINGHE also penetrated the minor female's vagina with WICKRAMASINGHE's fingers.

9.     On April 18, 2019, the OPP arrested WICKRAMASINGHE for the charges of luring, sexual assault, and invitation to sexual touching, in violation of Canadian laws.  The OPP consulted with WICKRAMASINGHE's wife to identify electronic devices in his residence at Elmvale, Ontario, Canada, which may contain further evidence of crimes involving the sexual exploitation of a minor.  The OPP was able to identify and secure five (5) electronic devices pending the application and issuance of a search warrant.  The OPP also identified six (6) other electronic devices for consideration of a search warrant.

10.     On April 25, 2019, the OPP received a search warrant and seized the following property associated to WICKRAMASINGHE:

- Black Huawei Leicu cell phone
- Acer Aspire laptop
- Dell Inspiron laptop
- Apevia hard drive
- Huawei Model MLA-L03 cell phone

11.     On May 24, 2019, the OPP arrested WICKRAMASINGHE for additional charges related to this investigation of luring to facilitate the making

of child pornography, luring for invitation to sexual touching, material benefit from sexual services, and breach of recognizance.

12.   On October 11, 2019, I received a request from HSI Toronto to attempt to identify a potential child victim depicted in the OPP child exploitation investigation of WICKRAMASINGHE.  HSI Toronto provided me with information gleaned from the videos discovered during the OPP investigation suggesting the child victim was associated with the Dakota Alliance Soccer Club (DASC) in Sioux Falls, SD.  HSI Toronto also provided me with sanitized images of the child victim for possible identification.

13.   On October 11, 2019, I contacted DASC and requested assistance with the identification process.  I requested DASC email the photos to DASC coaches to further assist.  DASC coach Brandon Barkus immediately identified the victim as ████████████, DOB: ████/2000.

14.   Due to ████████ currently being an adult, I contacted OPP Detective Kip Wohlert and requested additional information about the creation dates of the suspected child exploitation involving ████████.  Detective Wohlert replied the videos appeared to have been created in February 2015, and were titled "████████████".

15.   On October 16, 2019, South Dakota Division of Criminal Investigation Special Agent Jeff Kollars and I conducted an interview of ████████ at the Brookings Police Department in Brookings, SD.  ████████ was born on ████████, 2000 and is currently 20 years old.

16.   I gave ████████ as brief synopsis of how HSI Sioux Falls became involved with this investigation and requested ████████ provide a statement about her possible involvement with a male in Canada.  ████████ voluntarily provided the following information.

17.   Approximately five (5) years prior to this interview, while in 8th grade, and 14 years of age, ████████ received a friend notification on the mobile application KIK from a male using a handle of "WICK" or something similar.  ████████ attended 8th grade in 2014 and 2015.  ████████ and WICK started messaging each other soon thereafter on KIK.  ████████ was living in between ████████'s mother's residence located at ████████████████, Sioux Falls, SD, and ████████'s father's residence located at ████████, Sioux Falls, SD, at this time.  WICK initially told ████████ that WICK was 19 years of age and lived in Toronto, Canada.  ████████ told WICK that ████████ was 14 years of age and WICK stated he was fine with that.  ████████ stated ████████ was very naive at this age and believed the age difference was appropriate.

9

18.   ███████████ enjoyed and appreciated the attention WICK gave █████████. ██████ and WICK initially exchanged selfie photos of each other. A short time thereafter, WICK requested ████████ send WICK photos of ████████'s bare breasts. ████████ took the photos and shared them with WICK over KIK. WICK then requested ████████ take photos of ████████'s bare buttocks. ████████ took the photos and shared them with WICK over KIK. WICK ultimately asked ████████ for full nude photos and photos of ████████'s vagina. ████████ took the photos and shared them with WICK over KIK. ████████ believed ████████ shared 50+ photos with WICK which depicted ████████'s bare breasts, buttocks, and vagina. ████████ further stated WICK sent ████████ photos of WICK's erect penis. ████████ believed the photos of the erect penis were of WICK because WICK had very dark hair and the pubic hair in the photos matched WICK's hair.

19.   During their conversations, WICK told ████████ that WICK would try to meet with ████████ in Sioux Falls, SD. WICK also offered to purchase gifts for ████████, such as clothing or stuffed animals, and send them to ████████. ████████ declined the gifts and never provided WICK with ████████'s home address. ████████ further stated WICK portrayed WICK was very wealthy, made lots of money, possessed luxury vehicles and could take care of ████████.

20.   When ████████ was in 9th grade, 2015/2016 school year, and approximately 15 years of age, WICK asked ████████ to download Skype so they could video chat and WICK could hear ████████'s voice. WICK requested ████████ Skype with WICK while ████████ took a shower. ████████ accommodated WICK's request and observed WICK masturbating during these video chats. ████████ stated WICK also Skyped with ████████ while WICK showered. ████████ stated WICK also asked ████████ to Skype with WICK while ████████ was in her bedroom. ████████ stated WICK requested ████████ use a hairbrush handle to penetrate her vagina during the video chat. ████████ accommodated WICK's request and performed the sexual act with a hairbrush.

21.   ████████ believed ████████ used an iPhone 5 to Skype with WICK and used an iPad to record this particular incident. ████████ stated WICK used a laptop to Skype and believed WICK messaged from a cell phone. ████████ stated ████████ and WICK communicated for approximately one (1) year via KIK and/or Skype.

22.   WICK eventually told ████████ that WICK was actually 30+ years of age. ████████ believed WICK stated he was 36 years of age. ████████ became uncomfortable with the age difference and broke off the relationship with WICK near the end of 9th grade in 2016. ████████ stated WICK asked ████████ if ████████ told anyone about their relationship and activities. WICK further told ████████ that WICK could get in a lot of trouble in anyone found out.



23.     █████████ stated █████████ also provided WICK with █████████'s Snapchat handle of "██████████" and █████████'s Instagram handle of "████████████." █████████ stated after █████████ ended their relationship WICK occasionally reached out to █████████ on Snapchat from the handle "dumpsterkush". █████████ blocked WICK on Snapchat. █████████ showed me the blocked accounts on █████████'s Snapchat account and I observed the account "Keith Wick" with the handle "dumpsterkush".

24.     I showed █████████ a booking photo of WICKRAMASINGHE with no identifiers and █████████ positively identified the photo as the individual █████████ knew as "WICK."

25.     I showed █████████ six (6) sanitized photos provided to me by the OPP from images and videos depicting the child exploitation of a young female found on WICKRAMASINGHE's devices. █████████ positively identified herself as the female in all six (6) photos and was able to provide additional detail about the photos. The first photo depicted only █████████'s face. █████████ stated this image was likely generated in 8th grade in the shower at █████████'s mother's residence. The second through fourth photos depicted █████████ in a white DASC shirt. █████████ stated these images were likely generated in-between 8th and 9th grade in the basement of █████████'s father's residence. The fifth and sixth photos depicted █████████ in a yellow Galaxy Cup shirt. █████████ stated these images were likely generated in 9th grade at █████████'s father's residence.

26.     On March 27, 2020, and March 30, 2020, I reviewed image and video files received from the OPP which were located on an Acer laptop computer seized from WICKRAMASINGHE pursuant to their investigation. The records included 56 image files and 56 video files. I reviewed the 56 video files and identified 21 videos which depicted child pornography as defined in 18 U.S.C. § 2256. All the videos appear to depict the same Child Victim (CV), who was previously identified as █████████.

27.     Two (2) of the videos captured a male's voice during video chats with the CV. Those files were identified as █████████████████████████████████████ and ████████████████████████████████████. I requested OPP Detective Wohlert and OPP Detective Lisa McGinnis listen to the videos in an attempt to identify the male voice. Detective Wohlert subsequently contacted me and stated Detectives Wohlert and McGinnis listened to the videos and found the male's voice is similar to, and believed to be that of WICKRAMASINGHE.

28.     I identified the following files as containing child pornography:

- File ███████████████████████████; 0:04:49 in length. CV is naked in the shower. CV appears to be video chatting

with an individual and taking instructions to perform sexual acts such as penetrate CV's vagina with an object. CV is whispering during the video chat. Only the CV's voice can be heard.

- File ██████████████████; 0:04:40 in length. CV is naked in bed in the dark. CV appears to be video chatting with an individual and taking instructions to perform sexual acts such as penetrate CV's vagina with an object. CV is whispering during the video chat. Only the CV's voice can be heard.

- File ██████████████████; 0:05:00 in length. CV is naked in the shower. CV appears to be video chatting with an individual and taking instructions to perform sexual acts such as penetrate CV's vagina with an object. CV is whispering during the video chat. Only the CV's voice can be heard.

- File ██████████████████; 0:00:59 in length. CV is naked in bed in the dark. CV appears to be video chatting with an individual and taking instructions to perform sexual acts such as penetrate CV's vagina with an object. CV is whispering during the video chat. Only the CV's voice can be heard.

- File ██████████████████; 0:01:27 in length. CV is naked in the dark. CV appears to be video chatting with an individual and taking instructions to perform sexual acts. CV appears to be instructed to spit on the handle of a hairbrush. CV appears to place the hairbrush on the CV's genitals, however this is not depicted in the video. CV is whispering during the video chat.

- File ██████████████████; 0:04:57 in length. CV appears to be video chatting with an individual and taking instructions to perform sexual acts, however there is no audio. CV penetrates the CV's vagina with the handle of a hairbrush.

- File ██████████████████; 0:04:59 in length. CV appears to be video chatting with an individual and taking instructions to perform sexual acts such as penetrate CV's vagina with the handle of a hairbrush. The CV appears to be told to penetrate the CV's anus with the handle of hairbrush, however the CV states "No it hurts." CV then pushes the handle of the hairbrush into the CV's anus. CV is whispering during the video chat. Only the CV's voice can be heard.

12

- File ███████████████████████; 0:03:46 in length. CV is naked in the dark. CV appears to be video chatting with an individual and taking instructions to perform sexual acts such as penetrate CV's vagina with the handle of a hairbrush. CV is whispering during the video chat. Only the CV's voice can be heard.

- File ███████████████████████; 0:03:29 in length. CV appears to be video chatting with an individual and taking instructions to perform sexual acts such as penetrate CV's vagina with the handle of a hairbrush. CV is whispering during the video chat. Only the CV's voice can be heard.

- File ███████████████████████; 0:03:20 in length. CV appears to be video chatting with an individual and taking instructions to perform sexual acts such as penetrate CV's vagina with the handle of hairbrush. CV is whispering during the video chat. Only the CV's voice can be heard.

- File ███████████████████████; 0:02:30 in length. CV appears to be video chatting with an individual and taking instructions to perform sexual acts such as penetrate CV's vagina with the handle of a hairbrush. CV is whispering during the video chat. Only the CV's voice can be heard.

- File ███████████████████████; 0:04:59 in length. CV appears to be video chatting with an individual and taking instructions to perform sexual acts. CV straddles the camera showing the CV's vagina and anus. The CV penetrates the CV's vagina with the handle of a hairbrush. CV is whispering during the video chat. Only the CV's voice can be heard.

- File ███████████████████████; 0:04:15 in length. The CV appears to be video chatting with an individual and taking instructions to perform sexual acts such as penetrate CV's vagina with the handle of a hairbrush. CV is whispering during the video chat. Only the CV's voice can be heard.

- File ███████████████████████; 0:05:51 in length. CV is naked in shower. CV appears to be video chatting with an individual and taking instructions to perform sexual acts such as penetrate CV's vagina with an object. CV is whispering during the video chat. Only the CV's voice can be heard.

13

- File ███████████████████████; 0:02:05 in length.  CV is naked in bed in the dark.  CV appears to be video chatting with an individual and taking instructions to perform sexual acts such as penetrate CV's vagina with the handle of a hairbrush.  CV is whispering during the video chat.  Only the CV's voice can be heard.

- File ███████████████████████; 0:04:58 in length.  CV appears to be video chatting with an individual and taking instructions to perform sexual acts.  CV straddles the camera showing the CV's vagina.  CV penetrates the CV's vagina with the handle of a hairbrush.  CV is whispering during the video chat.  Only the CV's voice can be heard.

- File ███████████████████████; 0:04:59 in length.  CV appears to be video chatting with an individual and taking instructions to perform sexual acts.  CV straddles the camera showing the CV's vagina.  CV penetrates the CV's vagina with the handle of a hairbrush.  CV is whispering during the video chat.  Only the CV's voice can be heard.

- File ███████████████████████; 0:04:57 in length.  CV appears to be video chatting with an individual and taking instructions to perform sexual acts.  CV straddles the camera showing the CV's vagina.  CV penetrates the CV's anus with the handle of a hairbrush.  CV is whispering during the video chat.  Only the CV's voice can be heard.

- File ███████████████████████; 0:04:59 in length.  CV appears to be video chatting with an individual and taking instructions to perform sexual acts.  CV straddles the camera showing the CV's vagina.  CV penetrates the CV's anus with the handle of a hairbrush.  CV is whispering during the video chat.  Only the CV's voice can be heard.

- File ███████████████████████; 0:04:44 in length.  CV appears to be video chatting with an individual and taking instructions to perform sexual acts.  CV straddles the camera showing the CV's vagina.  CV penetrates the CV's vagina and anus with the handle of a hairbrush.  CV is whispering during the video chat.  Only the CV's voice can be heard.

- File ███████████████████████; 0:04:59 in length.  CV appears to be video chatting with an individual and taking instructions to perform sexual acts.  CV straddles the camera

14

showing the CV's vagina and anus.  CV penetrates the CV's vagina
and anus with the handle of a hairbrush.  CV is whispering during
the video chat.  Only the CV's voice can be heard.

29.    On May 7, 2020, I received a Western Digital 8TB SATA hard drive,
SN: VDHMNGVD, from HSI Toronto containing, the forensic image of an Acer
laptop computer, identified as P19042878 Acer LTHD01 500GB, seized from
WICKRAMASINGHE, pursuant to the OPP investigation.

30.    I believe a search warrant of the Western Digital 8TB SATA hard
drive identified in Attachment A will locate images depicting the child sexual
exploitation of victim ████████████████.

## CHARACTERISTICS COMMON TO INDIVIDUALS WHO HAVE A SEXUAL INTEREST IN CHILDREN AND/OR WHO RECEIVE AND/OR POSSESS CHILD PORNOGRAPHY

31.    Based on my previous investigative experience related to child
exploitation investigations, and the training and experience of other law
enforcement officers with whom I have had discussions, I know there are certain
characteristics common to individuals who have a sexual interest in children
and/or receive, or possess images of child pornography:

a.    Individuals who have a sexual interest in children and/or receive,
or possess images of child pornography may receive sexual
gratification, stimulation, and satisfaction from contact with
children, or from fantasies they may have viewing children engaged
in sexual activity or in sexually suggestive poses, such as in person,
in photographs, or other visual media, or from literature describing
such activity.

b.    Individuals who have a sexual interest in children and/or receive,
or possess images of child pornography may collect sexually explicit
or suggestive materials, in a variety of media, including
photographs, magazines, motion pictures, videotapes, books, slides
and/or drawings or other visual media.  Individuals who have a
sexual interest in children or images of children oftentimes use these
materials for their own sexual arousal and gratification.  Further,
they may use these materials to lower the inhibitions of children
they are attempting to seduce, to arouse the selected child partner,
or to demonstrate the desired sexual acts.

c.    Individuals who have a sexual interest in children and/or receive,
or possess images of child pornography almost always possess and
maintain their hard copies of child pornographic material, that is,
their pictures, films, video tapes, magazines, negatives,

photographs, correspondence, mailing lists, books, tape recordings, etc., in the privacy and security of their home or some other secure location. Individuals who have a sexual interest in children or images of children often retain pictures, films, photographs, negatives, magazines, correspondence, books, tape recordings, mailing lists, child erotica, and videotapes for many years.

d.    Likewise, individuals who have a sexual interest in children and/or receive, or possess images of child pornography often maintain their child pornography images in a digital or electronic format in a safe, secure, and private environment, such as a computer and surrounding area. These child pornography images are often maintained for several years and are kept close by, usually at the possessor's residence, inside the possessor's vehicle, or, at times, on their person, to enable the individual to view the child pornography images, which are valued highly.

e.    Individuals who have a sexual interest in children and/or receive, or possess images of child pornography also may correspond with and/or meet others to share information and materials, rarely destroy correspondence from other child pornography distributors/possessors, conceal such correspondence as they do their sexually explicit material, and often maintain lists of names, addresses, and telephone numbers of individuals with whom they have been in contact and who share the same interests in child pornography.

f.    Individuals who have a sexual interest in children and/or receive, or possess images of child pornography prefer not to be without their child pornography for any prolonged time period. This behavior has been documented by law enforcement officers involved in the investigation of child pornography throughout the world.

## **CONCLUSION**

32.    Based on my training and experience, and the facts as set forth in this affidavit, I believe there is probable cause to believe that there exists evidence of a crime, contraband, instrumentalities, and/or fruits of violations of criminal laws as specified herein, including identification of the person who used the electronic devices described in Attachment A. The facts outlined above show that the devices listed in Attachment A have been used for the exploitation of children using the internet including violations of 18 U.S.C. §§ 2251, 2252, 2252A (production, receipt and possession of child pornography), which items are more specifically described in Attachment B.

33.     For these reasons, I request authority to seize all electronic communications and other content stored in the devices, to be searched off-site in a controlled environment.

_____
Special Agent Craig Scherer
Homeland Security Investigations

Subscribed and sworn to before me, telephonically, on the 27th day of _____May_____, 2020, at Sioux Falls, South Dakota.

_____
VERONICA L. DUFFY
United States Magistrate Judge

17

## ATTACHMENT A
## Property to Be Searched

This warrant applies to the contents of and information associated with a Western Digital 8TB SATA hard drive, SN: VDHMNGVD, containing the forensic image of an Acer laptop computer, identified as P19042878 Acer LTHD01 500GB, seized from Nuwan WICKRAMASINGHE, currently in the custody of HSI Sioux Falls located at 2708 N. 1st Avenue, Sioux Falls, SD.

# ATTACHMENT B
## PROPERTY TO BE SEARCHED AND/OR SEIZED

This warrant authorizes (i) the search of the property identified in Attachment A for only the following and (ii) authorizes the seizure of the items listed below only to the extent they constitute the following:

(a)    evidence of violations of 18 U.S.C. §§ 2252 and 2252A ("subject violations"); or

(b)    any item constituting contraband due to the subject violations, fruits of the subject violations, or other items possessed whose possession is illegal due to the subject violations; or

(c)    any property designed for use, intended for use, or used in committing any subject violations.

Subject to the foregoing, the items authorized to be seized include the following:

1. Computer(s), computer hardware, computer software, computer related documentation, computer passwords and data security devices, mobile telephone devices, mobile data storage devices, mobile electronic music players, video gaming devices, videotapes, video recording devices, video recording players, and video display monitors that may be, or are used to: visually depict child pornography or child erotica; display or access information pertaining to a sexual interest in child pornography; display or access information pertaining to sexual activity with children; or distribute, possess, or receive child pornography, child erotica, or information pertaining to an interest in child pornography or child erotica.

2. Any and all computer software, including programs to run operating systems, applications (such as word processing, graphics, or spreadsheet programs), utilities, compilers, interpreters, and communications programs, including, but not limited to, P2P software.

3. Any and all notes, documents, records, or correspondence, in any format and medium (including, but not limited to, e-mail messages, chat logs and electronic messages) pertaining to the possession, receipt, or distribution of child pornography as defined in 18 U.S.C. § 2256(8) or to the possession, receipt, or distribution of visual depictions of minors engaged in sexually explicit conduct as defined in 18 U.S.C. § 2256(2).

4. In any format and medium, all originals, computer files, copies, and negatives of child pornography as defined in 18 U.S.C. § 2256(8), visual

19

depictions of minors engaged in sexually explicit conduct as defined in 18 U.S.C. § 2256(2), or child erotica.

5. Any and all notes, documents, records, or correspondence, in any format or medium (including, but not limited to, e-mail messages, chat logs and electronic messages), identifying persons transmitting, through interstate or foreign commerce by any means, including, but not limited to, by the United States Mail or by computer, any child pornography as defined in 18 U.S.C. § 2256(8) or any visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256(2).

6. Any and all notes, documents, records, or correspondence, in any format or medium (including, but not limited to, e-mail messages, chat logs and electronic messages, other digital data files and web cache information) concerning the receipt, transmission, or possession of child pornography as defined in 18 U.S.C. § 2256(8) or visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256(2).

7. Any and all notes, documents, records, or correspondence, in any format or medium (including, but not limited to, e-mail messages, chat logs and electronic messages, and other digital data files) concerning communications between individuals about child pornography or the existence of sites on the Internet that contain child pornography or that cater to those with an interest in child pornography.

8. Any and all notes, documents, records, or correspondence, in any format or medium (including, but not limited to, e-mail messages, chat logs and electronic messages, and other digital data files) concerning membership in online groups, clubs, or services that provide or make accessible child pornography to members.

9. Any and all records, documents, invoices and materials, in any format or medium (including, but not limited to, e-mail messages, chat logs and electronic messages, and other digital data files) that concern any accounts with an Internet Service Provider.

10. Any and all records, documents, invoices and materials, in any format or medium (including, but not limited to, e-mail messages, chat logs and electronic messages, and other digital data files) that concern online storage or other remote computer storage, including, but not limited to, software used to access such online storage or remote computer storage, user logs or archived data that show connection to such online storage or remote computer storage, and user logins and passwords for such online storage or remote computer storage.

11. Any and all visual depictions of minors.

20

12. Any and all address books, mailing lists, supplier lists, mailing address labels, and any and all documents and records, in any format or medium (including, but not limited to, e-mail messages, chat logs and electronic messages, and other digital data files), pertaining to the preparation, purchase, and acquisition of names or lists of names to be used in connection with the purchase, sale, trade, or transmission, through interstate or foreign commerce by any means, including by the United States Mail or by computer, any child pornography as defined in 18 U.S.C. § 2256(8) or any visual depiction of minors engaged in sexually explicit conduct,  as defined in 18 U.S.C. § 2256(2).

13. Any and all documents, records, or correspondence, in any format or medium (including, but not limited to, e-mail messages, chat logs and electronic messages, and other digital data files), pertaining to the ownership or use of the devices listed in Attachment A, including, but not limited to, rental or lease agreements, rental or lease payments.

14. Any and all diaries, notebooks, notes, and any other records. in any format or medium (including, but not limited to, e-mail messages, chat logs and electronic messages, and other digital data files), reflecting personal contact and any other activities with minors visually depicted while engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256(2).

15. Records or other items which evidence ownership or use of electronic devices listed in Attachment A, including, but not limited to, sales receipts, bills for Internet access, purchase agreements, registration documents, or profiles.

16. Before reviewing data from the electronic storage media or electronic stored information seized pursuant to this warrant for purposes unrelated to this investigation, the government agrees to request another search warrant from the court.

21